UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANFORD TAYLOR,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES AFL-CIO, et al.,<br><br>　　　　Defendants. | Case No. 3:18-cv-07827-WHO<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 27, 33 |

Plaintiff Sandford Taylor brings claims against his union's district council, alleging it used a corrupt process to pass new bylaws—including salary increases for council leadership—without sufficient notice to or participation by union membership. Before me are cross-motions for summary judgment by Taylor and by the Painters and Allied Trades District Council 36 ("District Council 36") and the International Union of Painters and Allied Trades, AFL-CIO ("IUPAT" or "international union"), the two defendants in this case. Although Taylor raises valid concerns about the manner in which District Council 36 handled the bylaws referendum, the defendants are entitled to summary judgment because the undisputed facts show that Taylor himself was able to vote.

## BACKGROUND

Taylor has been a member of Sign, Display & Allied Crafts, Local Union 510 ("Local 510") since about 2006 or 2007.[1] Deposition of Sandford D. Taylor ("Taylor Depo.") [Dkt. No. 35-1] 14:12-20. Local 510 is one of 11 local unions that make up District Council 36, which

---

[1] Taylor does his best to attend each of Local 510's monthly meetings. Taylor Depo. 18:9-25.

comprises approximately 10,000 members in all. Declaration of Ana Hanson ("Hanson Decl.") [Dkt. No. 34] ¶ 5. District Council 36 is affiliated with IUPAT, although IUPAT has no role in overseeing its day-to-day operations, its employee hiring or supervision, or its collective bargaining negotiations or agreements. Hanson Decl. ¶¶ 4, 6, 7. IUPAT represents members who work across the United States and Canada in the finishing trades, as painters, drywall finishers, glass workers, and more. *Id.* ¶ 4.

The IUPAT Constitution, ratified in 2015, requires that each district council frame its own bylaws and periodically amend those bylaws to conform to the IUPAT's Model Bylaws.[2] Taylor Decl. Ex. XX, IUPAT Constitution ("IUPAT Const.") § 124(a); Hanson Decl. ¶¶ 8, 9, 10; *see* Taylor Depo. 21:9. A Bylaws Committee for each district council must follow certain procedures to amend or modify bylaws. IUPAT Const. § 124(b). The bylaws themselves, along with all proposed changes, must be submitted to IUPAT for approval before they go into effect. § 124(a); Hanson Decl. ¶ 10.

When the district council intends to amend or modify its bylaws, it must provide notice to the membership by mail "at least 15 days prior to the meeting(s) at which the members will consider and vote on the question." IUPAT Const. § 124(c). "The notice must specifically state the question to be voted on, including the precise amount or rate of any change in dues, fees or assessments, and must include a copy of any proposed Bylaw amendment." *Id.* From May 22 to July 5, 2018, District Council 36's Bylaws Committee met to review and make changes to its bylaws. Hanson Decl. ¶ 12; *see id.* Ex. B (old bylaws). Among other changes, including to bring the bylaws into conformity with the new IUPAT Model Bylaws, the committee proposed salary changes for District Council 36 leadership. The Business Manager/Secretary-Treasurer's salary would be made equal to 65% of the General President's salary, rather than 50%, and certain district council 36 employee salaries would be made equal to a certain percentage of the Business Manager/Secretary-Treasurer's salary.[3] *Id.* ¶¶ 14, 15.

---

[2] At the hearing, counsel for District Council 36 admitted its amendments were tardy in the wake of the IUPAT's new Model Bylaws.

[3] By at least July 9, 2018, District Council 36 leadership had determined to have the referendum

2

On July 17, 2018, District Council 36 sent a notice by first class mail to the home addresses of all of its members. Hanson Decl. ¶ 19. The mailer notified members that a referendum vote would take place on August 4, provided a list of voting locations along with the hours of the vote, and included a 43-page copy of the proposed new bylaws. *Id.* ¶¶ 19, 21, Ex. D [Dkt. No. 34-4] (notice). District Council 36 sent the mailer to all members on the same date. *Id.* ¶ 20. IUPAT played no role in this process. *Id.* ¶ 22.

Taylor learned about the proposed amendments when he received the notice in the mail around July 20. Taylor Depo. 26:6-11, 33:2-7. He spoke with a few other Local 510 members about the mailer and understood that all members had received it at the same time he did. *Id.* at 34:2-25, 60:7-12. He called Hanson, the Executive Assistant of District Council 36, on July 25, 2018 asking for a copy of the then-existing bylaws so that he could compare them with the proposed new bylaws. *See id.* at 32:10-12, 36:3-9; Hanson Decl. ¶ 23. The same day, she mailed Taylor a cover letter and a copy of the then-existing bylaws. *Id.*; *see* Hanson Decl. Ex. E [Dkt. No. 34-5] (cover letter). He received it a few days later. Taylor Depo. 37:2-21. Two other members contacted Hanson to request a copy of the bylaws, and she also responded to them the same day they made the request. Hanson Decl. ¶ 25.

Taylor compared the then-existing bylaws with the proposed new bylaws, writing down some of the changes that he noticed. Taylor Depo. 39:18-40:8. As he did so, "what really caught [his] eye was the change in compensation for district council management." *Id.* at 39:18-40:1. Prior to the vote, Taylor spoke with about 50 members of Local 510 to tell them the amendments were "bad" and that it looked like District Council 36 was "trying to sneak it through." *Id.* at 42:21-43:14. Although he knew that other local unions that make up District Council 36 would be participating in the vote, he did not have enough time to reach out to those members. *Id.* at 43:15-22.

The ratification vote took place on August 4, 2018 as scheduled. Hanson Decl. ¶ 26.

---

vote on August 4, 2018. *See* Hanson Decl. Ex. C [Dkt. No. 34-3]. Taylor raises the fact that Steve Bigelow of District Council 36 attended a July 11 Local 510 meeting and yet failed to mention the forthcoming vote. Declaration of Sandford Taylor ("Taylor Decl.") [Dkt. No. 28] ¶ 6.

District Council 36 members ratified the changes to the bylaws by a vote of 320-54. *Id.* ¶ 28. Including Taylor, 12 Local Union 510 members voted. *Id.* ¶ 26; Taylor Decl. ¶ 10. Out of the people Taylor spoke to, 30 or 40 people said they would vote against the amendments but in fact did not vote. Taylor Depo. 48:3-15. Taylor believes that the process of passing the new bylaws was unreasonable because only a tiny fraction of Local 510 members and District Council 36 members voted. *Id.* at 77:16-20, 78:19, 79:15-16.

The IUPAT approved the changes to District Council 36's bylaws on August 24, 2018. Hanson Decl. ¶ 29; Taylor Decl. ¶ 15; *see also* Taylor Depo. 81:17-25 (acknowledging that the bylaws had been implemented). On December 31, 2018, Taylor filed his complaint in this court alleging a single claim under section 101(a)(1) of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(1). Complaint ("Compl.") [Dkt. Nos. 1, 3]. Taylor moved for summary judgment on July 2, 2019, and the defendants filed their own motion on July 10. *See* Plaintiff's Motion for Summary Judgment ("Pl. MSJ") [Dkt. No. 27]; Defendants' Motion for Summary Judgment ("Def. MSJ") [Dkt. No. 33].

## LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding the motion, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a

judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

The defendants move for summary judgment on several grounds. First, Taylor lacks standing to sue. Def. MSJ 8-13. Second, he fails to present evidence that District Council 36 discriminated against him. *Id.* at 13-15. Finally, undisputed evidence shows that IUPAT had no role in the process that Taylor argues was corrupt. *Id.* at 15-17. Each of those arguments is correct.

Taylor brings a single claim under subsection 101 of the LMRDA, which provides that members of unions "shall have equal rights and privileges . . . to vote in elections or referendums . . . subject to reasonable rules and regulations in such organization's constitution and bylaws." 29 U.S.C.A. § 411(a)(1). He challenges the "corrupt" process by which District Council 36 and IUPAT conducted the bylaws vote. Oppo. Def. MSJ 5; *see also* Taylor Depo. 21:22-23 ("The bylaws referendum and notice is the problem here."). He asserts that notice was insufficient because "information was withheld," and he did not have reasonable time to review the changes to the bylaws. *Id.* at 6.

There are three requirements for standing: (i) "the plaintiff must have suffered an injury in fact;" (ii) "there must be a causal connection between the injury and the conduct complained of;" and (iii) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks, citations, and modifications omitted). An injury in fact is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks and citations omitted). Taylor lacks Article III standing.

Even assuming that defendants' conduct regarding the notice and referendum was wrongful, the undisputed evidence shows that Taylor experienced no injury. He was able to request a copy of the old bylaws; to compare the old and new bylaws; to track differences he noticed between the two; and to talk to dozens of Local 510 members about his concerns about the

changes. Most importantly, he exercised his right to participate in the referendum by voting against the bylaws changes.[4] *See Tisza v. Commc'ns Workers of Am.*, 953 F.2d 298, 300 (7th Cir. 1992) (concluding that plaintiffs lacked standing to challenge the failure to count some referendum votes because their own votes were counted). In addition, Taylor faces a traceability problem; there is no evidence suggesting that the union members who did not vote would have voted against the new bylaws at a greater rate than the members who did in fact vote. *See id.* at 301 (noting that the plaintiffs "[had] no reason to believe that members of the non-reporting locals were less favorably disposed toward the proposal than were members of the 287 reporting locals").

Even if Taylor could establish standing, his claim would fail for other reasons. There is no evidence that District Council 36 discriminated against Taylor; instead, he concedes that he received all of the same information at the same time as other members. *See Sergeant v. Inlandboatmen's Union of the Pac.*, 346 F.3d 1196, 1201 (9th Cir. 2003) (noting that subsection 101(a)(1) "requires that rights given to some members must be given to all, subject only to reasonable rules or regulations"). Further, he presents no evidence to suggest that IUPAT had a role in the process he contends was corrupt. Instead, undisputed evidence shows that IUPAT requires district councils to create and amend their bylaws, and its only role is to approve those bylaws before they take effect. *See* IUPAT Const. § 124(a)-(c); Hanson Decl. ¶¶ 7-11, 22 ("IUPAT played no role in the setting the date and time of the August 4, 2018 bylaws ratification vote; identifying voting locations; recruiting volunteers to proctor the election; deciding how the vote would be conducted; or preparing and distributing the Bylaws Mailer.").[5]

---

[4] Even if Taylor had standing to pursue claims on behalf of himself, he fails to meet the necessary requirements for standing to represent the interests of his fellow union members. *See McCollum v. California Dep't of Corr. & Rehab.*, 647 F.3d 870, 879 (9th Cir. 2011) ("To demonstrate third party standing, a plaintiff must show his own injury, a close relationship between himself and the parties whose rights he asserts, and the inability of the parties to assert their own rights."). Specifically, Taylor presents no evidence suggesting the other members of District Council 36 cannot assert their own rights. *See Tisza*, 953 F.2d at 300 (finding "no foundation for third-party standing" because the members of the other union branches did not need the plaintiffs "as their champions").

[5] The defendants raise numerous evidentiary objections to exhibits submitted with Taylor's motion for summary judgment. Opposition to Pl. MSJ [Dkt. No. 38]. I did not rely on the challenged
<tr>6</tr>

## CONCLUSION

It is no wonder that Taylor finds a sub-single-digit participation rate in the referendum troublesome; his critiques in this respect are well taken. As a representative body, District Council 36 should endeavor to achieve better. But given Taylor's ability to participate in the referendum and his concession that he received the same treatment as his fellow members, the defendants are entitled to summary judgment. The defendants' motion is GRANTED. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: September 18, 2019

William H. Orrick
United States District Judge

---

evidence to resolve the pending motions; the objections are DENIED AS MOOT.